UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                Case No. 8:23-cr-39-KKM-TGW

STEVEN ANDREW GUNN
_____/

**SENTENCING MEMORANDUM IN SUPPORT OF
A REASONABLE SENTENCE OF 144 MONTHS' IMPRISONMENT**

COMES NOW, the Defendant, STEVEN ANDREW GUNN, through undersigned counsel and pursuant to 18 U.S.C. § 3553(a), files this Sentencing Memorandum supporting a downward variance to 144 months' imprisonment to be followed by a term of supervised release of Life. As grounds in support, Steven Gunn shows:

**FACTUAL AND PROCEDURAL HISTORY**

Unfortunately, in our society, the criminal justice system often becomes the place where individuals with significant mental health conditions and serious development disorders find themselves, not because they are hardened criminals, but because their untreated mental health conditions and development disorders have caused behaviors that bring them into contact the criminal justice system.[1]

---

[1] *See Mental Health Problems of Prison and Jail Inmates*, U.S. Department of Justice, Revised 12/14/2006, at http://www.bjs.gov/content/pub/pdf/mhppji.pdf.

1

According to the U.S. Department of Justice's 2006 statistics, more than half of all prison and jail inmates have a mental health condition, including 705,600 inmates in state prisons; 78,800 in federal prisons; and 479,000 in local jails. *Id.* These estimates represent 56% of state prisoners, 45% of federal prisoners, and 64% of jail inmates. *Id.* In 2014, studies similarly found that 73% of women and 55% of men in state prison, 61% of women and 44% of men in federal prison, and 75% of women and 63% of men in local jails had at least one mental health condition.[2]

Similarly, survey data from the U.S. Bureau of Justice Statistics shows that in 2011 and 2012, 30% of women and 19% of men in state and federal prisons had a "cognitive disability," a category that includes autism.[3] A 2012 study of 431 male prisoners found an autism prevalence of 4.4%, which is about double the prevalence in the general population, with many others likely being undiagnosed. *Id.* While autism itself has not been found to be linked to crime, it is strongly linked to factors like unemployment and homelessness, which research has consistently shown

---

[2] *See By the Numbers: Mental Illness Behind Bars,* PBS News, May 15, 2024, located at https://www.pbs.org/newshour/health/numbers-mental-illness-behind-bars.

[3] *See Autism Behind Bars: Prisons are Often Ill-Equipped to Handle Autistic Inmates Who are at Risk for Mental Health Problems and Abuse,* The Transmitter, Peter Hess, Nov. 11, 2020, located at. https://www.thetransmitter.org/spectrum/autism-behind-bars/

2

increases a person's chances of entering the criminal justice system, often repeatedly. *Id*.

Tragically for Steven Gunn it is his mental health conditions and neurological developmental disorders that bring him before this Court for sentencing. Steven is a 31-year-old offender with a documented history of multiple mental health issues (Bipolar Disorder, Major Depressive Disorder, Anxiety, and suicidality) with onset in early childhood, superimposed on two neurological disorders (Autism Spectrum Disorder (ASD)[4] and Attention Deficit Disorder (ADD)). These conditions have been exacerbated by severe socioeconomic impoverishment and have led to him now being before this Court having entered guilty pleas to attempted enticement of a minor to engage in sexual activity and possession and accessing with intent to view depictions of a minor engaged in sexually explicit conduct.[5]

---

[4] ASD is a neurodevelopmental condition characterized mainly by persistent deficits in social and emotional communicative behaviors which ultimately impacts one's ability to develop, maintain, and understand relationships. Individuals on the autism spectrum struggle with social communications, which in turn affects functioning and achievement in all settings (e.g., personal, academic, and occupational). Individuals with ASD are prone to concrete and inflexible thinking which can impact problem-solving, particularly when under stress. *See Autism Diagnostic Criteria: DSM V*, Autism Speaks, at https://www.autismspeaks.org/autism-diagnostic-criteria-dsm-5.

[5] *See* Dr. Precious N. Ogu's *Confidential Forensic Psychological Report,* referenced herein as "Forensic Psych. Report, p.__," which has been filed under seal.

Unlike most similarly charged defendants, Steven is developmentally delayed, socially awkward, and often childlike; his criminal conduct was not driven by a paraphilic or sexual attraction to prepubescent minors, but by poverty and a naive desire for a cell phone and cell phone minutes he and his mother used to obtain and maintain employment. PSR ¶20.

## FACTUAL AND PROCEDURAL HISTORY

### *History and Characteristics of Steven Andrew Gunn*

Things were difficult for Steven from the beginning, and these challenges laid the foundation for his significant mental health conditions and developmental impairments. PSR ¶¶74-76.[6] Specifically, Steven was born 31 years ago in Bartow, Florida, to William Chavez (age 55) and Jencie Gunn (age 59). PSR ¶67. Although born in Bartow, Steven has spent his entire life in Winter Haven, Florida. PSR ¶71. Mr. Gunn's parents were never married nor ever in a formal or long-term relationship. PSR ¶67. Mr. Gunn was raised in a single parent home with his mother and younger sister Keyla Gunn (age 28). PSR ¶¶67, 69.

Steven's father has never been in his life financially, emotionally, or otherwise. PSR ¶68. As a child, Steven remembers seeing his father around, but whenever he would approach his father and attempt to engage him in a conversation,

---

[6] *See also* Forensic Psych. Report, pp. 1-2.

his father would simply ignore him and walk away. *Id*. Other than speaking to his father when he was ten, Steven has not had contact with him since. *Id*. Because of the complete abandonment by his father, today Steven has "no feelings" about him. *Id*.

In contrast to his father, Steven is exceptionally close (and one could say enmeshed) with his mother Jencie; he describes their relationship as being "two peas in a pod." *Id*. Steven is so wrapped up in his mother's life, he was brought to tears when describing her as part of the Presentence Report interview. *Id*. Despite being 31, because of his mental health conditions and neurodevelopmental disorders, Steven has never lived independently and has always relied on his mother for his emotional and financial needs. *Id*.[7] At the time of his arrest, Steven was living with his mother and their nine adopted stray cats in a lower-income neighborhood in an unkempt two-bedroom one-and-a-half-bathroom home she was renting from her church in Winter Haven, Florida. PSR ¶71.

Steven's mother Jencie has always been poor and so too has been Steven. PSR ¶67.[8] Because of limited economic resources, lack of child support from Steven's

---

[7] Steven has no credit, no financial assets, liabilities, or monthly expenses, and relies on his mother for full financial support. PSR ¶¶88-89.

[8] Because he has spent his entire life in a poverty-stricken, single-parent household, financial strain has always been a significant and persistent source of stress for Steven. Forensic Psych. Report, p. 2.

5

father, and no marketable skills, Steven and his mother have consistently depended on the charitable support of their church. Steven has always worn off-brand clothing and was regularly teased in school for being "smelly." *Id*. Because of his ASD, Steven was already socially awkward, so combined with his physical appearance, he was constantly bullied and ostracized on by his classmates. *Id*.

Steven has vivid and disturbing childhood memories of being physically pushed around and having his belongings taken away by his classmates. *Id*. The severe bullying targeted his social deficits and poverty. *Id*. Steven emotionally and academically struggled in school and was placed in special education classes. PSR ¶80. Despite the repeated abuse, Steven was rarely protected by his teachers and when he tried to defend himself, his teachers would take the side of his abusive classmates, making Steven out to be the aggressor. PSR ¶74.

While in elementary school Steven was diagnosed with ADD, bipolar disorder, depression, and social anxiety. PSR ¶74. Although he was born with ASD, Steven was not diagnosed until his early 20's when he had his first contact with the state criminal justice system. PSR ¶¶59, 74.[9] As a child, Steven was prescribed

---

[9] At 19, Steven discovered that he could communicate with people better online; he and his teenaged girlfriend engaged in sexually explicit conversations over the internet. PSR ¶59. During one discovered conversation, Steven's girlfriend advised him that she was thinking of him sexually, that she dreamed of having sex with him, that she really wanted him to send a picture of his penis to her, and that she was "horny" and really wanted Steven to stick his "dick inside of her." *Id*. Steven responded by asking her to send him nude pictures of herself, which she never sent.

6

medication to treat his bipolar disorder, major depressive disorder, and anxiety, however his mother was against him taking the medications (which were expensive), so he did not use them as prescribed. PSR ¶74.

Steven's mental health conditions led to him being found incompetent to proceed during state criminal court proceedings and contributed to three Baker Act commitments. PSR ¶¶59, 74. Steven's first Baker Act commitment occurred in December 2010, when, at 17, he was civilly committed after verbalizing suicidal ideation. PSR ¶74. Three months later, in March 2011, Steven was Baker Acted again after a suicide attempt where he tried to strangle himself by tying an electrical cord around his neck. *Id.* Two months after that, Steven's third Baker Act commitment occurred after he had an emotional outburst at school. *Id*. Four years later, at 24, Steven was declared incompetent to proceed in state court and remained incompetent for two years, from around 2015-17. PSR ¶¶59-60.

As an adult, because of his mental health and developmental disorders, particularly his ASD, Steven has struggled to find and maintain employment. PSR ¶87. At the time of his federal arrest Steven was unemployed. *Id*. He had been

---

*Id*. After police uncovered the chats, Steven—still only 19—was arrested and ultimately entered a guilty plea to two counts of child abuse. *Id*. He received a time-served sentence with 4 years of probation, which he later violated by committing a petit theft of a cell phone. PSR ¶¶59-60. During the felony violation proceedings, Steven was found incompetent to procced; after being restored to competency, he received 36 months' imprisonment with 815 days credit. *Id*.

earning money by donating plasma weekly (December 2022 to January 2023), earning $100 per week. *Id.* Before donating plasma, Steven and his mother worked together at Chipotle, where he earned $11 per hour. *Id.* Steven left Chipotle, because of verbal abuse he and his mother received from their coworkers who accused them of smelling "like cat urine." *Id.*[10]

During the short periods of time when Steven maintained employment, all the money he earned would go directedly to his mother and their shared household expenses. PSR ¶89. This severe economic impoverishment coupled with Steven's unmedicated mental health conditions and neurodevelopment disorders contributed to the poor decision-making that brings him before this Court for sentencing. *See* Forensic Psych. Report, pp. 1-3.

## *Facts and Circumstances of the Offense*

Steven's offense conduct, which was affected by his poverty, mental illness, and neurodevelopmental disorders, all stems from an unsophisticated and misguided scheme to obtain a cell phone and cell phone minutes for himself and his mother to use to obtain and maintain employment. PSR ¶¶20, 26. Steven was having online communications with more than one minor female during which he engaged in

---

[10] Before working at Chipotle, Steven had sporadically worked for a handful of other fast food chains including Checkers, Guthrie's, and Crispers; he usually left those jobs because of perceived mistreatment by management. *Id.*

8

sexually explicit conversations, sent images of his genitals, and tried to solicit the minor females to send him nude pictures of themselves. PSR ¶¶15-25.[11] Steven never tried to meet the minor females (all of whom resided hundreds of miles, if not entire states, away); he never requested that they travel to meet him; he never met in person with any minors for any purpose; and he has never engaged in any sexual contact with any minors during his lifetime. *Id*.

Steven's only goal was to obtain nude images of female minors rather than meeting minors to engage in unlawfully sexual activity. PSR ¶20. Additionally, in contrast to most defendants who engage in similar criminal conduct, Steven's conversations and solicitations of nude images was not for his own sexual gratification, but out of financial necessity. *Id*.; Forensic Psych. Report, p. 2.[12] None of the images Steven received showed minors being raped or tortured by adults and he did not have thousands of images and thousands of videos of children being sexually abused. PSR ¶20. Unlike the 80% of offenders found in possession of child

---

[11] During an interview with agents, Steven admitted to communicating with around 15 female minors (ages 8 to 13) over five years during which he sought to obtain nude images of the minor females that he would send to a registered sex offender in exchange for a cell phone and cell phone minutes. PSR ¶20.

[12] A forensic search of Steven's cell phone revealed only 28 images of child pornography. PSR ¶20. Given that the typical child pornography defendant has thousands and sometimes millions of images of child pornography, the fact that Steven had only 28 images and no videos is compelling evidence of his lack of sexual interest in minor children and child pornography generally. *Id*.

9

pornography who have over 600 images (if not exponentially more), Steven was found in possession of only 28 images, none of which included any depictions of violence, torture, or children being sexually assaulted by adults. *Id.*[13] The 28 images possessed by Steven were instead all still images he had obtained during his online chats he then used to barter for a cell phone and cell phone minutes. *Id*.

As described by Steven and corroborated by law enforcement through the forensic search of his cell phone, Steven met Edward Henderson online, an elderly registered sex offender living in Louisiana, who offered him a cell phone and agreed to pay for his cell phone minutes in exchange for Steven obtaining and sending him nude images of females between the ages of 8 and 13. *Id.* While Steven knew what he was doing was wrong, he participated in the trafficking in nude images of minor females out of financial necessity for meager financial gain (i.e., a cell phone and cell phone minutes). *Id*.; Forensic Psych. Report, p. 2.[14] While Steven's offense conduct was not limited in time nor in the number of female minors he

---

[13] *See Federal Sentencing of Child Pornography Non-Production Offenses,* June 2021 (finding that a typical non-production child pornography offense involved a median number of 4,265 images with some offenders possessing and distributing millions of images and videos and that 77.2% involved 600 or more images), located at https://tinyurl.com/9cpp5ett.

[14] Steven's desire for a cell phone led to him having contact with the criminal justice system in his past state case of petit theft. PSR ¶60. When Steven was 21, he took a cell phone from a public transit bus which did not belong to him. *Id*. He was charged with petit theft and after being found incompetent to proceed and spending 300 days in pretrial detention he received a time served sentence. *Id*.

10

communicated with, his motivation was financial, and his well-documented mental health conditions and neurodevelopment disorders significantly contributed to his poor decision-making process and this troubling and serious offense conduct. PSR ¶20; Forensic Psych. Report, pp. 1-2.

Despite his poverty, significant mental health issues, and neurodevelopmental disorders, on February 2, 2023, the government indicted Steven with 4 counts related to his unlawful solicitation and attempted solicitation of child pornography images from multiple minor females; images he subsequently transmitted to Edward Henderson in exchange for a cell phone and cell phone minutes. PSR ¶¶1-5.

On March 29, 2024, pursuant to a written plea agreement, Steven entered a guilty plea to attempted persuasion, inducement, or enticement of a minor to engage in sexual activity (Count One) and possession and accessing with intent to view depictions of minors engaged in sexually explicit conduct (Count Four). PSR ¶7. This Court accepted Steven's guilty plea and adjudicated him guilty. PSR ¶14. Sentencing is set for August 20, 2024, at 2:00 p.m. Doc. 58.

## STATUTORY PENALTIES AND GUIDELINE CALCULATIONS

Steven Gunn is facing a 10-year minimum mandatory penalty and a term of sexual offender supervised release from five years to life. PSR ¶¶91, 94. His advisory guideline imprisonment range is suggesting an excessive and unreasonably high

11

advisory sentencing range of 30 years to life imprisonment. PSR ¶92.[15]

Steven Gunn's extraordinarily high advisory sentencing range is in part due to 17 levels worth of enhancements because he used a computer, his offense involved the distribution of images for financial gain (for a cell phone and cell phone minutes), and because his conduct involved repeated solicitations from at least one minor victim. PSR ¶¶42-44, 54. These 17-levels are causing his advisory range to skyrocket from a low-end of 12 years, 7 months to a low-end of 30 years.

## A 144-MONTH SENTENCE IS REASONABLE

Because of the mitigating history and characteristics of Steven Gunn, including his serious mental health conditions (bipolar disorder, major depressive disorder, and anxiety) and his neurodevelopmental disorders (ASD and ADD) coupled with the facts and circumstances surrounding the poverty-driven nature of his offense conduct, a downward variance pursuant to 18 U.S.C. § 3553(a) is appropriate. It is respectfully submitted that a term of incarceration of 144 months (12 years) followed by a lifetime of sexual offender supervised release would be sufficient but not greater than necessary to accomplish he 18 U.S.C. § 3553(a)

---

[15] It is important to note that despite Steven Gunn's two prior contacts with the state criminal justice system (i.e., child abuse and petit theft), which are causing him to be a criminal history category III offender, he has only received one term of imprisonment for 36 months where 2 years, 2 months, and five days of which had been served during competency restoration in pretrial detention. PSR ¶¶56-57.

purposes of sentencing.

Steven Gunn is a 31-year-old individual with significant neurological developmental disorders and mental health conditions that contributed to three prior Baker Act commitments and two years of legal incompetency. Unlike the typical offender prosecuted for similar offense conduct, Steven's offense was not driven out of a sexual attraction to minor females, but out of poverty and unmedicated mental health conditions, leading to a foolish scheme to obtain a cell phone and cell phone minutes so he and his poverty-stricken enmeshed mother could obtain and maintain employment.

Given the atypical facts and circumstances surrounding Steven's offense conduct, a sentence of 30 years is simply excessive and "greater than necessary" to address the seriousness of his criminal behavior. An appropriate and reasonable sentence is a term of imprisonment of 144 months to be followed by a lifetime term of supervised release, which includes the special condition he receive meaningful mental health treatment and is further subjected to the state and federal sexual offender restrictions related to internet access, contacts with minors, residential restrictions, and sexual offender registration and reporting requirements.

A downward variance to 144 months would also follow 18 U.S.C. § 3553(a)(6)'s directive that this Court strive to impose similar sentences for similarly situated defendants convicted of similar offense conduct. *See United States*

13

*v. Caleb Belanger*, Case No. 8:23-cr-453-KKK-TGW (M.D.F.L.). Specifically, on July 30, 2024, this Court sentenced Caleb Belanger, a 25-year-old offender, who, like Steven Gunn, had entered guilty pleas to enticement of a minor to engage in illicit sexual activity and possession of child pornography. Although facing an exceedingly high advisory guideline imprisonment range of 235 to 293 months, this court varied downward and imposed a 120-month sentence followed by a lifetime term of supervised release. In many ways Steven's offense conduct is less egregious and his history and characteristics more mitigating than Mr. Belanger's case:

| **Defendant** | **Age & Social Economic Background** | **Mental Health & Other Characteristics** | **# of Minor Females** | **# of Images** | **Guidelines** |
|---|---|---|---|---|---|
| Caleb Belanger, Case No. 8:23-cr-453-KKM-TGW | 25 years old  Affluent Two-Parent Household | IQ 137  High School Baseball Player  USF Student  Poly Controlled Substance Abuser | Solicited 30 minor females for child pornography images  Provided Alcohol, Vapes, and Money for Images  Female Minors Ages 13 to 17 | 1,209 images and 111 videos of child sexual abuse materials  Did not distribute images | 38 & Category I  235 to 293 months |
| Steven Gunn, Case No. 8:23-cr-39-KKK-TGW | 31 years old  Poor Single-Parent Household | Special Education Classes in High School  Bullied in School | Solicited 15 minor females for nude images  Female Minors Ages | 28 nude images of minor females  None of images | 41 & Category III  360 to life |

14

| | | | 8 to 13 | involved rape or sexual abuse | |
|---|---|---|---|---|---|
| | | No Drug Use<br><br>Bipolar<br>Anxiety<br>Depression<br>Suicidal<br>ASD<br>ADD<br><br>Baker Acted Three Times & Found Incompetent | | No videos<br><br>Distributed images to one person for cell phone & minutes | |

Additionally, while Steven never had in-person contact with any minors and offended because of poverty and mental health impairment-driven desire for a cell phone and cell phone minutes, the significantly more sophisticated Mr. Belanger's conduct appears to have been motivated out of a sexual attraction to minor females whom he met in person to provide them money, vapes, and alcohol in exchange for the sexually explicit nude images and videos.

It is not disputed that both Caleb Belanger and Steven Gunn engaged in troubling and serious criminal conduct that exploited several minor females, only that both men are similarly situated defendants that possess mitigating history and characteristics warranting a below-guideline sentence closer to the ten-year minimum mandatory penalty. It is only because of Steven Gunn's slightly higher criminal history category (III v. I) that it might be reasonable for this Court to impose a slightly higher sentence of 144 months rather than the 120-month sentence this

15

Court imposed for the similarly situated Caleb Belanger.

A 144-month sentence will reasonably reflect Steven's offense conduct, his unique characteristics including his neurological development disorders and his longstanding mental health disorders and will also more than adequately punish him for his offense conduct. Given Steven's ASD, he is at high risk for abuse during any term of incarceration so any term of imprisonment will be more onerous than that for the typical offender sentenced to such a lengthy term of imprisonment.

A sentence of 144 months will create respect for the law because it will illustrate that the law has appropriately considered Steven Gunn as an individual and his unique human failings that mitigate his crime and his punishment. Additionally, the imposition of a term of supervised release of Life, during which Steven will receive much needed and long overdue appropriate mental health counseling and stringent sex offender community restrictions, will adequately protect the public from any future offense conduct.

WHEREFORE, the Defendant, STEVEN ANDREW GUNN, respectfully moves this Honorable Court to impose a downward variance to 144 months' imprisonment to be followed by a term of supervised release of Life.

DATED this 13th day of August 2024.

Respectfully submitted,

A. FITZGERALD HALL, Esq.
FEDERAL DEFENDER

*/s/ Adam B. Allen*
Adam B. Allen, Esq.
Florida Bar No. 0998184
Assistant Federal Defender
400 North Tampa St., Ste. 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Adam_Allen@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of August 2024, a true and correct copy of the above was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Erin Favorit.

*/s/ Adam B. Allen*
Adam B. Allen, Esq.
Assistant Federal Defender